IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DWAYNE ANTHONY BREWER, SR.,**

    **Plaintiff,**

v.                                                **CIVIL ACTION NO. 5:06cv98**
                                                                    **(Judge Stamp)**

**SCOTT PAUGH, Warden/Superintendent,**
**MR. TRIGGS, Correctional Officer,**
**MR. ROBINSON, Correctional Officer,**
**HEAD OF DEPARTMENT OF TROOP 2 144,**
**SR. TROOPER J.D. BURKHART,**

    **Defendants,**

## REPORT AND RECOMMENDATION

On August 9, 2006, plaintiff initiated this case by filing a civil rights complaint under 42 U.S.C. §1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915(A).

**I. The Complaint**

In the complaint the plaintiff alleges that on March 9, 2006, he was assaulted in the Eastern Regional Jail by Sr. Trooper J.D. Burkhart and two correctional officers, Mr. Triggs and Mr. Robinson. The plaintiff claims that the assault began after he refused to give Trooper Burkhart his middle name. The plaintiff alleges that during the assault, Officer Triggs hit him in the side of the head and Officer Robinson kicked him the groin. The plaintiff alleges that Trooper Burkhart kicked him in the side and put his foot on his neck. The plaintiff alleges he was then taken to segregation, and during the walk to segregation, Officer Triggs forced his hand to the back of his head and slammed him into four or five

closed doors. The plaintiff alleges he was denied medical treatment and that he lay in pain in segregation for three (3) days, unable to eat or use the bathroom. The plaintiff also expresses his belief that the assault was motivated by the fact that he is a Black Muslim.[1] The plaintiff alleges that the assault was witnessed by several employees of the Eastern Regional Jail, including Mrs. Nine and Ms. Brant, who are counselors, as well as the intake officer, Ms. Barthdoll, and the two officers who worked in the control booth. As relief, the plaintiff asks that his medical expenses be paid, that he be sent to a hospital for proper medical treatment, and he be paid $100,000 for his pain and suffering. In addition, the plaintiff wants this incident logged into Trooper Burkhart's and Correctional Officer Triggs' employment records. Finally, he wants better training in handling prisoners and a federal investigation into the treatment of inmates at the Eastern Regional Jail.

## II. ANSWERS AND MOTIONS TO DISMISS

Without waiving their right to raise the issue of improper service, Senior Trooper J.D. Burkhart and "head of Department of Troop 2 144" filed an answer through their counsel. In their answer these defendants deny the allegations that pertain to them and raise a number of affirmative defenses. In addition, these defendant's move to dismiss with prejudice the claims against them. In a separate pleading, again without waiving the requirements of service of process, the defendant, Scott Paugh has filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. As grounds, the defendant states that he is the Warden of the Martinsburg Correctional Center, which is operated by the Division of Corrections rather than the Regional Authority. Because the plaintiff appears the have been

---

[1] As apparent support for this claim, the plaintiff alleges that because he is a Black Muslim, he was given used briefs and socks when he first arrived at the Eastern Regional Jail. As well, he claims that he was made to sleep on a mat on the floor under a table and chair. He claims that his cell had a bright light that was never turned off which deprived him of sleep. He also claims that he was not provided a place to practice Islam

a prisoner at the Eastern Regional Jail, rather than the Martinsburg Correctional Center, defendant Paugh moves to be dismissed from the case. In the alternative, defendant Paugh moves to be dismissed by virtue of the doctrine of qualified immunity.[2]

### III. **STANDARD OF REVIEW**

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must view the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. §1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. §1915(e).

A complaint is frivolous if it is without merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12( b)(6) is not automatically frivolous. See Neitzke at 328. Section 1915(e)

---

[2]The Court notes that on August 9, 2006, the plaintiff filed a Certificate of Service stating that he served a copy of the complaint on the defendants by regular United States mail. It does not appear, however, that service was properly effected as no summonses were issued by the Court and plaintiff failed to provide proof of service. Moreover, the Court notes that because plaintiff is proceeding *in forma pauperis*, he is entitled to Court ordered services via the United States Marshall Service. Nonetheless, the Court should only order service of process if, after an initial review of the complaint, the Court determines that plaintiff's claims are not frivolous or malicious and that plaintiff has stated a claim against the defendants. Because service does not appear proper in this instance, and because the undersigned finds that plaintiffs' complaints fail to state a claim, the pending motion to dismiss filed by Scott Paugh, as well as the motions to dismiss filed by Head of Department Troop 2 144 and J.D. Burkhart should be denied without prejudice as moot.

dismissals should only be ordered when the legal theories are "indisputably meritless,"[3] or when claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25.32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**IV. Analysis**

**A. Scott Paugh**

In his complaint, plaintiff names Scott Paugh ("Paugh") in his capacity as the Warden/Superintendent of the Eastern Regional Jail. However, plaintiff does not allege that Paugh was personally involved in the violation of his constitutional rights. Instead, plaintiff names Paugh only in his official capacity as the overseer of the Jail and its employees.

There is no *respondeat superior* liability under § 1983. See Monnell v. Department of Social Services, 436 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge, supra. Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive

---

[3] Id. at 327.

4

practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[4]

Because the plaintiff fails to allege any personal involvement on the part of Paugh and does not make any allegations which reveal the presence of the required elements for supervisory liability, plaintiff fails to state a claim against Paugh, and he should be dismissed as a defendant in this action.[5]

**B. Correctional Officers Triggs and Robinson**

In the complaint, plaintiff alleges that Triggs and Robinson assaulted him upon his arrival at the Eastern Regional Jail. Even assuming that plaintiff has stated facts sufficient to carry his claim beyond summary dismissal, plaintiff's claims against these two individuals should be dismissed for the failure to exhaust administrative remedies.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to

---

[4]"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

[5]The undersigned recognizes that Scott Paugh is not the Warden/Superintendent of the Eastern Regional Jail as established by the Declaration of Scott Paugh (Doc. 8-3). However, there is a Warden/Superintendent of the Eastern Regional Jail, and regardless of any error in the plaintiff's identification of that individual, the same legal principles would apply to the actual Warden/Superintendent.

5

all inmate suits about prison life, whether they involve general circumstances or particular episodes"[6] and is required even when the relief sought is unavailable. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements..." See Booth at 741, n.6.

In addition, although generally, the exhaustion of administrative remedies should be raised by the defendant as an affirmative defense, the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir, 2005). If the failure to exhaust is apparent from the face of the complaint, the court has the authority under 28 U.S.C. § 1915 to dismiss the case *sua sponte*. Id. at 682.

Plaintiff acknowledges in his complaint that there is a prisoner grievance procedure at the Eastern Regional Jail and admits that he did not utilize that procedure.[7] Thus, the failure to exhaust is clear on the face of the complaint and *sua sponte* dismissal is appropriate. See Anderson, 407 F.3d at 682.

**C. Sr. Trooper J. D. Burkhart**

---

[6] Porter v. Nussle, 534 U.S. 516, 524 (2002).

[7] By way of explanation, the plaintiff notes that he feared for his safety and "there was no adverse effect to follow." The plaintiff notes that he did attempt to use Rule VII of the Handbook of Inmate Rules and Procedures which is published by the WV Regional Jail and Correctional Facility Authority. That Rule applies to "Special Problems" and provides that "[i]f an inmate is threatened or assaulted, the incident should be reported to the staff member at the earliest possible time. Such report may be made orally or in writing. After a report is made, the threatened inmate has a right to be separated from the person who threatened or assaulted them. The person or persons who have threatened or assaulted him/her will be subject to disciplinary procedures and/or prosecution in the courts." However, use of this Rule does not satisfy nor excuse exhaustion.

6

Trooper Burkhart is a state police officer and is not an employee of the regional jail. Therefore, it would appear that the plaintiff could not pursue administrative remedies with regard to the actions allegedly taken by Trooper Burkhart. Although not specifically set forth in the plaintiff's complaint, it appears that Trooper Burkhart's involvement in this matter stemmed from transporting the plaintiff from Maryland to the Eastern Regional Jail to await trial.[8]

Because it appears that the plaintiff was a pre-trial detainee at the time of his alleged assault, his claim is governed under the Due Process Clause of the Fourteenth Amendment instead of the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979); Martins v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). Pre-trial detainees are subject to the same protection under the Fourteenth Amendment that prisoners receive via the Eighth Amendment. Hill v. Nicodemus, 979 F.2d 987, 999 (4th Cir. 1980).

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Hudson v. McMillian, 503 U.S. 1 (1992). An excessive force case has two prongs: an objective prong and a subjective prong. Under the objective prong, the plaintiff must establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)). Subjectively, the plaintiff must show that the "prison officials maliciously and sadistically used force to cause harm." Hudson, at 9; William v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

According to the Fourth Circuit of Appeals, absent the most extraordinary circumstances" an individual who suffers only *de minimis* injury cannot prevail on an Eighth Amendment excessive force

---

[8]The plaintiff has since been returned to the State of Maryland, and a detainer has been lodged with that state requiring the plaintiff's return to the State of West Virginia for incarceration once he has completed his sentence in Maryland.

claim. Riley v. Dorton, 115 F.3d 1159 (4th Cir.)(en banc) *cert. denied*, 522 U.S. 1030 (1977); Norman, supra at 1263.[9] The Fourth Circuit Court of Appeals has further determined that a *de minimis* injury reveals that *de minimis* force was used. Norman, supra at 1262. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, supra at 9-10. However, if the force used is "repugnant to the conscience of mankind," i.d., "diabolic" or "inhuman physical punishment, a prisoner can prevail on an excessive force claim even if the injuries sustained are *de minimis*. Norman, supra at 1263.

Further, in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181 (1999), the pre-trial detainee asserted that the defendants, a police officer and a deputy, grabbed him by the collar, pointed a gun at him, punched and kicked him about the head and ribs, and placed a knee in the prisoner's lower back while pulling the prisoner's head backwards until the prisoner's back popped. The pre-trial detainee also alleged that the defendants jabbed a small wooden baton inside his nose. The Court found that the detainee's medical records revealed that as a result of the incident, the prisoner was treated for "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth." Id. at 482. The Court

---

[9]In both Riley and Norman, the Fourth Circuit Court of Appeals found that both the plaintiff's injuries and force used were *de minimis*. In Norman, a jail officer began swinging his cell keys in the direction of the plaintiff's face when the prisoner became disruptive. The prisoner asserted that he put his hands up to cover his face, and the keys hit his right thumb causing his right hand to swell. The Court ruled that the prisoner sustained *de minimis* injuries proving that *de minimis* force was used. In Riley, the pre-trial detainee complained that he feared for his safety after the defendant police detective placed the tip of a pen in his nose and threatened to rip it open, and slapped the prisoner on the face. The Court of Appeals extended Norman to pre-trial detainees and held that Riley sustained *de minimis* injuries, thus demonstrating the defendant used only *de minimis* force.

8

held that the prisoner's failure to show more than a *de minimis* injury defeated his excessive force claim.

Here, the specific allegations against Trooper Burkhart are that he kicked the plaintiff in the side and placed his foot on the plaintiff's neck. However, the plaintiff alleges no specific injury as the result of Trooper Burkhart's alleged "force." In fact, the plaintiff makes no allegations of any specific injuries as the results of the conduct of either of the correctional officers or Trooper Burkhart. He makes no claim of bruises, swelling, redness, or tenderness. Although he alleged that he received no medical treatment, he does not indicate why treatment was necessary. Furthermore, although he asks, as damages, that his medical expenses be paid and that he be sent to the hospital for proper medical treatment, he makes no indication was treatment is necessary. Accordingly, the plaintiff has failed to demonstrate **any** injury that would support his claims of excessive force by Trooper Burkhart. Therefore, he fails to state a claim, and his complaint against Trooper Burkhart should be dismissed.

## D.  HEAD OF DEPARTMENT OF TROOP 2 144

Again, there is no *respondeat superior* liability under § 1983. Monnell, supra.. Here, as with Scott Paugh, the plaintiff fails to allege any personal involvement on the part of the "head of Department of Troop 2 144" and does not make any allegations which reveal the presence of the required elements for supervisory liability. Therefore, plaintiff fails to state a claim, and the "head of Department of Troop 2 144" should be dismissed as a defendant in this action.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the plaintiff's claims against Scott Paugh, Trooper J.D. Burkhart, and the head of Department of Troop 2 144 be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. §§ 1915(A) and 1915(e) for the failure

to state a claim. In addition, the undersigned recommends that plaintiff's claims against Correctional Officer Triggs and Correctional Officer Robinson be **DISMISSED WITHOUT PREJUDICE** for the failure to exhaust administrative remedies. In addition, the undersigned recommends that Scott Paugh's Motion to Dismiss or for Summary Judgment (Docs. 8 & 10) and the Motion to Dismiss (Doc. 17) filed by Head of Department of Troop 2 144 and John Burkhart be **DENIED WITHOUT PREJUDICE** as moot.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is directed to mail a copy of this Recommendation to the *pro se* plaintiff and any counsel of record.

DATED: January 24, 2007

/s *John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE